UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

KWAME GARNETT,

                       Plaintiff,

      -against-

THE CITY OF NEW YORK; NEFTALI BETANCES,
Individually and in His Official Capacity; KEITH
CARPENTER, Individually and in His Official Capacity;
ABEL JOSEPH, Individually and in His Official Capacity;
ERICK ORTIZ, Individually and in His Official Capacity;
CARLOS SIERRA, Individually and in His Official
Capacity; TYRONE VIRUET, Individually and in His
Official Capacity; UNDERCOVER OFFICER C0039,
Individually and in His Official Capacity; UNDERCOVER
OFFICER C0243, Individually and in His Official Capacity;
and JOHN/JANE DOES, Nos. 1-10, Individually and in
Their Official Capacities (the names John and Jane Doe
being fictitious, as the true names are presently unknown),

                       Defendants.

------------------------------------------------------------------------x

**FIRST AMENDED
COMPLAINT**

**Jury Trial Demanded**

**ECF Case**

13 Civ. 7083 (JSR) (JLC)

       Plaintiff KWAME GARNETT, by his attorney, Robert T. Perry, respectfully alleges as follows:

## NATURE OF ACTION

       1.     Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violation of his civil rights under 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiff also asserts supplemental claims under New York law.

## JURISDICTION AND VENUE

       2.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3.     The Court has jurisdiction over plaintiff's federal law claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4.     The Court has jurisdiction over plaintiff's supplemental state law claims under 28 U.S.C. § 1367.

5.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to plaintiff's claims occurred in this district.

## JURY DEMAND

6.     Plaintiff demands trial by jury of all issues properly triable thereby pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7.     Plaintiff KWAME GARNETT is a resident of Oneida County in the State of New York.

8.     Defendant THE CITY OF NEW YORK ("the City") is, and was at all times relevant herein, a municipal corporation duly organized and existing under the laws of the State of New York.  The City maintains the New York City Police Department ("NYPD"), which acts as the City's agent in the area of law enforcement and for which the City is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers, as said risks attach to the public consumers of the services provided by the NYPD.

9.     Defendant NEFTALI BETANCES is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD.  During the relevant times herein, defendant Betances was a sergeant assigned to Narcotics Boro Manhattan North.  Defendant Betances is being sued in his individual and official capacities.

10.    Defendant KEITH CARPENTER is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD.  During the relevant times herein,

2

defendant Carpenter was a detective assigned to Narcotics Boro Manhattan North. Defendant Carpenter is being sued in his individual and official capacities.

11.    Defendant ABEL JOSEPH (Shield No. 2050) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Joseph was a detective assigned to Narcotics Boro Manhattan North. Defendant Joseph is being sued in his individual and official capacities.

12.    Defendant ERICK ORTIZ (Shield No. 3383) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Ortiz was a detective assigned to Narcotics Boro Manhattan North. Defendant Ortiz is being sued in his individual and official capacities.

13.    Defendant CARLOS SIERRA is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Sierra was a detective assigned to Narcotics Boro Manhattan North. Defendant Sierra is being sued in his individual and official capacities.

14.    Defendant TYRONE VIRUET (Shield No. 5654) is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Viruet was a detective assigned to Narcotics Boro Manhattan North. Defendant Viruet is being sued in his individual and official capacities.

15.    Defendant UNDERCOVER OFFICER C0039 ("Undercover C0039") is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Undercover C0039 was a detective assigned to Narcotics Boro Manhattan North. Defendant Undercover C0039 is being sued in his individual and official capacities.

16.     Defendant UNDERCOVER OFFICER C0243 ("Undercover C0243") is, and was at all relevant times herein, a duly appointed agent, employee, officer, and servant of the NYPD. During the relevant times herein, defendant Undercover C0243 was a detective assigned to Narcotics Boro Manhattan North.  Defendant Undercover C0243 is being sued in his individual and official capacities.

17.     All "John Doe" and "Jane Doe" defendants are, and were at all relevant times herein, duly appointed agents, employees, officers, and servants of the NYPD.  The Doe defendants are being sued in their individual and official capacities.

18.     At all relevant times herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, employees, officers, and servants of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and duties.  At all relevant times herein, the individual defendants were acting for and on behalf of the NYPD, with the power and authority vested in them as agents, employees, officers, and servants of the NYPD.

19.     At all relevant times herein, the individual defendants acted jointly and in concert with each other.  Each individual defendant had the duty and the opportunity to protect plaintiff from the unlawful actions of the other individual defendants but each individual defendant failed and refused to perform such duty, thereby proximately causing plaintiff's injuries.

## STATEMENT OF FACTS

20.     On November 19, 2011, beginning at about 6:00 p.m., defendants Neftali Betances, Keith Carpenter, Abel Joseph, Erick Ortiz, Carlos Sierra, Tyrone Viruet, Undercover C0039, and Undercover C0243 conducted a controlled buy-and-bust narcotics operation in the vicinity of Lexington Avenue between East 115th Street and East 116th Street in Manhattan.

4

21.     Defendant Undercover C0243 acted as the primary undercover, and defendant Undercover C039 acted as the ghost undercover.

22.     Defendants Betances, Carpenter, Joseph, Ortiz, Sierra, and Viruet were all members of the tactical (field) team and situated in the area.

23.     At about 6:20 p.m., inside the Lexington Grocery, a deli at 1865 Lexington Avenue, defendant Undercover C0243 allegedly purchased crack cocaine and marijuana from Wakuan Cintron and Naim Roper in the presence of defendant Undercover C0039.

24.     Ten minutes later, at about 6:30 p.m., defendant Betances arrested plaintiff inside the El Barrio Music Center, an electronics store at 1870 Lexington Avenue, as plaintiff looked at electronic games.

25.     At the time of his arrest, plaintiff was not engaged in and had not been engaged in any criminal activity.

26.     Plaintiff had no involvement in the narcotics transaction that allegedly occurred inside the Lexington Grocery.

27.     In the buy report on the narcotics transaction prepared later that same day, defendant Undercover C0243 made no mention of any involvement by plaintiff in the transaction.

28.     Defendants Betances, Carpenter, Joseph, Ortiz, Sierra, and Viruet knew or should have known that plaintiff was not involved in the alleged narcotics transaction, as they were all situated in the area and thus had an opportunity to observe plaintiff's movements on the block.

29.     Prior to plaintiff's arrest, neither defendant Undercover C0039 nor defendant Undercover C0243 communicated to the tactical team (defendants Betances, Carpenter, Joseph, Ortiz, Sierra, and Viruet) that plaintiff had any involvement in the narcotics transaction.

30.     Defendant Betances lacked probable cause to arrest plaintiff in connection with the narcotics transaction.

5

31.     Plaintiff was taken to the 25th Precinct at 120 East 119th Street, where he was made to remove his clothes and squat for inspection of his anal cavity without probable cause or reasonable suspicion to believe that he had committed any crime or offense.

32.     One or more of the detectives involved in plaintiff's arrest also participated in the strip search at the 25th Precinct or were present nearby.

33.     No drugs, pre-recorded buy money, other contraband, or any evidence of criminal activity were found on plaintiff's person or in his possession.

34.     In connection with plaintiff's arrest, defendants prepared a false and misleading police report which they forwarded to the New York County District Attorney's Office ("District Attorney"). As a result, the District Attorney decided to prosecute plaintiff.

35.     Plaintiff was arraigned in New York County Criminal Court on about November 21, 2011 and charged with criminal sale of a controlled substance in the third degree in a complaint sworn to by defendant Tyrone Viruet.

36.     Defendant Viruet alleged -- based upon false and misleading information provided by defendant Undercover C0039 and defendant Undercover C0243 -- that plaintiff, acting in concert with Wakuan Cintron and Naim Roper, entered the Lexington Grocery at 1865 Lexington Avenue during the buy-and-bust narcotics transaction and stated: "Yo hurry up, y'all ain't done yet, get that money, I'm not looking to get locked up tonight." Plaintiff was not involved in the transaction and said no such thing.

37.     Bail was set at $50,000. Because plaintiff could not post that amount, he was taken to Rikers Island Correctional Facility ("Rikers").

38.     On about November 25, 2011, based upon the false, fabricated evidence that plaintiff was involved in the alleged buy-and-bust narcotics transaction, plaintiff was indicted on the charge of criminal sale of a controlled substance in the third degree.

39.     On about December 13, 2011, plaintiff was arraigned on the indictment and pleaded not guilty. Still unable to post bail, plaintiff was taken back to Rikers.

40.     Plaintiff's criminal trial began in New York County Supreme Court-Criminal Term on July 3, 2012.

41.     At trial, defendant Undercover C0039 falsely testified that he saw plaintiff enter Lexington Grocery at 1865 Lexington Avenue, state "Yo hurry up, y'all ain't done yet, get that money, I'm not looking to get locked up tonight," leave the store, walk across the street, and enter the El Barrio Music Center at 1870 Lexington Avenue.  But on cross-examination, defendant Undercover C0039 acknowledged that he was still watching the ongoing narcotics transaction inside 1865 Lexington Avenue and conceded that he "can only look at one thing at a time."

42.     The El Barrio Music Center is perhaps 100 feet or more -- across Lexington Avenue -- from the Lexington Grocery.  The view from inside the Lexington Grocery to inside the El Barrio Music Center is often blocked by passing traffic, including buses and trucks, as well as by the many boxes of items for sale typically stacked on the sidewalk outside the El Barrio Music Center.

43.     At trial defendant Undercover C0243 conceded that he made no mention of plaintiff in his buy report or in his grand jury testimony.  Defendant Undercover C0243 also testified that he did not hear plaintiff say anything inside the Lexington Grocery, even though defendant Undercover C0243 claimed plaintiff stood only a few feet away.

44.     On July 6, 2012, after deliberating for less than two hours, the jury found plaintiff not guilty of the only charge against him -- criminal sale of a controlled substance in the third degree.

45.     Following his acquittal, plaintiff was released from custody, after being incarcerated for nearly eight months at Rikers.

46.    As a result of the foregoing, plaintiff sustained, *inter alia*, emotional distress, mental anguish, shock, fright, apprehension, embarrassment, humiliation, loss of liberty, physical restraints, and violation of his constitutional rights.

## FIRST CLAIM FOR RELIEF

### (False Arrest Claim Under 42 U.S.C. § 1983)

47.    Plaintiff repeats and realleges paragraphs "1" through "46" with the same force and effect as if they were fully set forth herein.

48.    Defendants, acting in concert and within the scope of their authority, stopped, arrested, and caused plaintiff to be imprisoned without probable cause or reasonable suspicion to believe that plaintiff had committed any crime or offense, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## SECOND CLAIM FOR RELIEF

### (Unlawful Strip Search Claim Under 42 U.S.C. § 1983)

49.    Plaintiff repeats and realleges paragraphs "1" through "48" with the same force and effect as if they were fully set forth herein.

50.    Defendants, acting in concert and within the scope of their authority, caused plaintiff to be strip searched without probable cause or reasonable suspicion to believe that plaintiff had committed any crime or offense, in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## THIRD CLAIM FOR RELIEF

### (Malicious Prosecution Claim Under 42 U.S.C. § 1983)

51.    Plaintiff repeats and realleges paragraphs "1" through "50" with the same force and effect as if they were fully set forth herein.

52.     Defendants, acting in concert and within the scope of their authority, caused plaintiff to be prosecuted with malice and without probable cause -- a prosecution that terminated in plaintiff's favor -- in violation of plaintiff's right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

## FOURTH CLAIM FOR RELIEF

### (Violation-of-Right-to-Fair-Trial Claim under 42 U.S.C. § 1983)

53.     Plaintiff repeats and realleges paragraphs "1" through "52" with the same force and effect as if they were fully set forth herein.

54.     Defendants created false, fabricated evidence against plaintiff and used that evidence against plaintiff in legal proceedings.  As a result, plaintiff suffered a violation of his constitutional rights to a fair trial, as guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

## FIFTH CLAIM FOR RELIEF

### (Failure-to-Intervene Claim Under 42 U.S.C. § 1983)

55.     Plaintiff repeats and realleges paragraphs "1" through "54" with the same force and effect as if they were fully set forth herein.

56.     Each individual defendant had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in that defendant's presence by other police officers, but failed to intervene to prevent the unlawful conduct, despite having had a realistic opportunity to do so, in violation of plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

## SIXTH CLAIM FOR RELIEF

### (Municipal Liability Claim Under 42 U.S.C. § 1983)

57.     Plaintiff repeats and realleges paragraphs "1" through "56" with the same force and effect as if they were fully set forth herein.

58.     The individual defendants, singly and collectively, while acting under color of state law, engaged in conduct that constituted customs, policies, practices, procedures, rules, or usages of the City and the NYPD forbidden by the Constitution of the United States.

59.     The foregoing customs, policies, practices, procedures, rules, and usages include, but are not limited to, making arrests without probable cause and committing perjury.

60.     The existence of the foregoing customs, policies, procedures, rules, and usages may be inferred from repeated occurrences of similar wrongful conduct, as documented in recent civil rights actions filed against the City, including, but not limited to:

(1)     **Angel Bonilla v. City of New York**, United States District Court, Eastern District of New York, 12 CV 3368 (JBW) (police officers arrested 53-year-old disabled man inside 83rd Precinct in Brooklyn, where he had gone to ask about granddaughter, and falsely reported that he had trespassed in an apartment building blocks away);

(2)     **Ciara Caraballo v. City of New York**, United States District Court, Southern District of New York, 11 CV 8917 (JSR) (police officers arrested three individuals in front of 1862 Lexington Avenue in Manhattan on false charges, including assault in the second degree on police officer; all charges later dismissed; Civilian Complaint Review Board found that officers lacked probable cause to arrest);

(3)     **Michael Hemphill v. City of New York**, United States District Court, Southern District of New York, 11 CV 2160 (AKH) (police officers arrested individual in East Harlem on false charges, including obstructing governmental administration in second degree);

(4)     **Shelly Levy v. City of New York**, United States District Court, Southern District of New York, 11 CV 0227 (DLC) (police officers arrested individual in Chelsea area on false charges of resisting arrest and disorderly conduct);

(5)     **Casimiro Medina v. City of New York**, United States District Court, Eastern District of New York, 10 CV 3158 (NGG) (police officers arrested individual in Brooklyn on false drug possession charges; decline to prosecute); and

(6)     **Francisco Baez v. City of New York**, United States District Court, Southern District of New York, 08 CV 10604 (PKC) (police officers arrested 16-year-old near Union Square on false charges, including murder in second degree; officers coerced false confession from 16-year-old; lead detective stated in report that witness positively identified 16-year-old, when, in fact, witness did not; all charges later dismissed).

61.     In denying the City's motion to dismiss a municipal liability claim on *Iqbal/Twombly* grounds in *Colon v. City of New York*, No. 09 Civ. 8 (JBW), 2009 WL 4263362 (E.D.N.Y. Nov. 25, 2009), the Honorable Jack B. Weinstein observed:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department, there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

*Id.* at *2.

62.     Seemingly acknowledging the problem, New York City Police Commissioner Raymond E. Kelly stated, "When it happens, it's not for personal gain. It's more for convenience." Christine Hauser, *Few Results for Reports of Police Misconduct*, N.Y. Times, Oct. 5, 2009, at A19.

63.     Even a police officer on the tactical team involved in plaintiff's arrest here is being prosecuted for lying in connection with another arrest. Defendant Joseph was recently indicted on perjury charges allegedly for testifying falsely about a drug arrest. Ind. No. 04913-2013 (Sup. Ct. N.Y. County). *See Police Detective Accused of Perjury*, N.Y. Times, Oct. 30, 2013, at A21. After arresting a man in East Harlem allegedly for selling phencyclidine ("PCP"), defendant Joseph told a grand jury that he had searched for the buyers but could not find them. *Id.* But defendant Joseph later conceded at a pretrial suppression hearing that he had stopped the buyers but they did not have any PCP on them. *Id.*

11

64.     Since 2005, the NYPD has refused to prosecute 40% of the cases referred by the Civilian Complaint Review Board ("CCRB") for prosecution.   Christine Hauser, *Few Results for Reports of Police Misconduct*, N.Y. Times, Oct. 5, 2009, at A19.   And only 25% of the cases found substantiated by the CCRB resulted in NYPD discipline more severe than verbal instructions. *Id.*

65.     The City has inadequately screened, hired, retained, trained, and supervised its employees, including the individual defendants herein, to respect the constitutional rights of those individuals with whom NYPD police officers come in contact.

66.     The foregoing customs, policies, practices, procedures, rules, and usages constituted deliberate indifference to plaintiff's safety, well-being, and constitutional rights.

67.     The foregoing customs, policies, practices, procedures, rules, or usages were the direct and proximate cause of the constitutional violations suffered by plaintiff.

68.     The foregoing customs, policies, practices, procedures, rules, or usages were the moving force behind the constitutional violations suffered by plaintiff.

### Supplemental State Law Claims

69.     Plaintiff repeats and realleges paragraphs "1" through "68" with the same force and effect as if they were fully set forth herein.

70.     Within ninety (90) days after the claims herein arose, plaintiff duly served upon, presented to, and filed with the City a Notice of Claim setting forth all facts and information required under New York General Municipal Law § 50-e.

71.     More than thirty (30) days have elapsed since the presentation of plaintiff's claims to the City.  The City has wholly neglected or refused to make an adjustment or payment thereof.

72.     This action was commenced within one (1) year and ninety (90) days after the claims accrued.

73.     Plaintiff has complied with all conditions precedent to maintaining the instant action.

## SEVENTH CLAIM FOR RELIEF

### (Malicious Prosecution Under New York Law)

74.     Plaintiff repeats and realleges paragraphs "1" through "73" with the same force and effect as if they were fully set forth herein.

75.     Defendants, acting in concert and within the scope of their authority, caused plaintiff to be prosecuted with malice and without probable cause -- a prosecution that terminated in plaintiff's favor -- in violation of New York law.

## EIGHTH CLAIM FOR RELIEF

### (Negligent Screening, Hiring, and Retention Under New York Law)

76.     Plaintiff repeats and realleges paragraphs "1" through "75" with the same force and effect as if they were fully set forth herein.

77.     The City failed to use reasonable care in the screening, hiring, and retention of the NYPD employees who participated in the above unlawful conduct, in violation of New York law.

## NINTH CLAIM FOR RELIEF

### (Negligent Training and Supervision Under New York Law)

78.     Plaintiff repeats and realleges paragraphs "1" through "77" with the same force and effect as if they were fully set forth herein.

79.     The City failed to use reasonable care in the training and supervision of the NYPD employees who participated in the above unlawful conduct, in violation of New York law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands the following relief jointly and severally against all the defendants:

(A)     Compensatory damages in an amount to be determined at trial;

(B)     Punitive damages in an amount to be determined at trial;

13

(C)     Reasonable attorney's fees and costs of this litigation; and

(D)     Such other relief as this Court deems just and proper.

Dated:        Brooklyn, New York
              December 9, 2013

                              Respectfully submitted,

                              *Robert T. Perry*

                              ROBERT T. PERRY (RP-1199)
                              45 Main Street, Suite 230
                              Brooklyn, New York 11201
                              (212) 219-9410
                              *Attorney for Plaintiff*


TO:    <u>BY ECF AND FIRST CLASS MAIL</u>
       Shlomit Aroubas, Esq.
       Special Assistant Corporation Counsel
       *Attorney for Defendants The City of New York,*
       *Betances, Carpenter, Ortiz, Sierra, Viruet, Undercover*
       *Officer C0039, and Undercover Officer C0243*

       Walter A. Kretz, Esq.
       Scoppetta Seiff Kretz & Abercrombie
       *Attorney for Defendant Joseph*

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x
KWAME GARNETT,                                                    :
                                                                 :
                                              Plaintiff,          :
                                                                 :
            -against-                                            :
                                                                 :
THE CITY OF NEW YORK; NEFTALI BETANCES,                          :
Individually and in His Official Capacity; KEITH                  :
CARPENTER, Individually and in His Official Capacity;            :
ABEL JOSEPH, Individually and in His Official Capacity;          :        13 Civ. 7083 (JSR) (JLC)
ERICK ORTIZ, Individually and in His Official Capacity;          :
CARLOS SIERRA, Individually and in His Official                   :
Capacity; TYRONE VIRUET, Individually and in His                 :
Official Capacity; UNDERCOVER OFFICER C0039,                     :
Individually and in His Official Capacity; UNDERCOVER            :
OFFICER C0243, Individually and in His Official Capacity;        :
and JOHN/JANE DOES, Nos. 1-10, Individually and in               :
Their Official Capacities (the names John and Jane Doe           :
being fictitious, as the true names are presently unknown),      :
                                                                 :
                                              Defendants.         :
------------------------------------------------------------------------------x


# FIRST AMENDED COMPLAINT


ROBERT T. PERRY
45 Main Street, Suite 230
Brooklyn, New York 11201
(212) 219-9410
*Attorney for Plaintiff*