UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  4/6/15
```

-------------------------------------------------------------X
:
KWAME GARNETT,                                               :
:
                                        Plaintiff,          :          1:13-cv-7083-GHW
:
                -v -                                         :          OPINION AND ORDER
:
UNDERCOVER OFFICER C0039 and                                :
UNDERCOVER OFFICER C0243,                                    :
:
                                        Defendants.  :
:
-------------------------------------------------------------X

GREGORY H. WOODS, District Judge:

        A jury found Undercover Officer C0039 ("UC 39") liable for denial of the plaintiff's

right to a fair trial.  To do so, the jury found that the officer fabricated evidence.  UC 39

argues here that so long as he had probable cause to arrest the plaintiff, he was free to

fabricate additional evidence to support a conviction for the charged offense without

incurring liability.  He further argues that he was free to fabricate evidence without liability

so long as the evidence that he fabricated was arguably not admissible as evidence.

        These arguments are wrong as a matter of law.  The Second Circuit Court of Appeals

has clearly held that "[n]o arrest, no matter how lawful or objectively reasonable, gives an

arresting officer or his fellow officers license to deliberately manufacture false evidence

against an arrestee.  To hold that police officers, having lawfully arrested a suspect, are then

free to fabricate false confessions at will, would make a mockery of the notion that

Americans enjoy the protection of due process of the law and fundamental justice." *Ricciuti*

*v. N.Y. City Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997).

        UC 39 is promoting a devolution of the law from this clear standard.  The arguments

that he presents profoundly weaken the protection of citizens against the fabrication of

evidence by police officers.  The arguments are cleverly constructed on the basis of a non-precedential summary order—selectively quoted and interpreted in an ahistorical manner. Still, they are wrong.

Because the Second Circuit has spoken clearly in published, precedential decisions on these issues, the Court denies the defendant's motion for judgment as a matter of law. For the reasons stated below, the Court also rejects the other arguments asserted by the defendant and the plaintiff attacking the jury's verdict.

## I.     DEFENDANT'S RULE 50 MOTION

### A.     Background

The Court assumes the reader's familiarity with the underlying facts of this case.[1] Still, a short review may be helpful.  The plaintiff, Mr. Kwame Garnett, had been out of prison for just over a week when he was arrested for his alleged participation in a drug sale in East Harlem.  According to the facts elicited at trial, Mr. Garnett walked with two friends to an area near a convenience store at East 116th Street.  Mr. Garnett's friends went inside the store, and sold drugs to a person who, unfortunately for them, turned out to be an undercover police officer—Undercover Police Officer 0243 ("UC 243"), one of the defendants in this case.

Mr. Garnett acknowledged that he was on the sidewalk outside the store where the drug transaction took place.  Not, according to him, because he was involved in the drug sale—rather, he was simply buying chicken at the store next door.

Undercover Police Officer 0039 ("UC 39") told a different story.  UC 39 was assigned as the "ghost" undercover officer on the day of the arrest, and was stationed

---

[1] See this Court's opinion on the defendants' motion for summary judgment. *Garnett v. City of New York*, No. 13 Civ. 7083, 2014 WL 3950904, at *1 (S.D.N.Y. Aug. 13, 2014).

outside the store. According to UC 39, he saw Mr. Garnett outside the store, where the drug transaction was taking place, looking up and down the street. In UC 39's view, Mr. Garnett was acting like a look-out for a drug transaction.

UC 39's account of the arrest went further. According to him, Mr. Garnett entered the small store while the sale was taking place. UC 39 followed him into the 6' x 9' store. While inside the store, UC 39 asserted, Mr. Garnett made this incriminating statement "in sum and substance": "Yo, hurry up, ya'll ain't done yet, get that money, I'm not looking to get locked up tonight, let's go." No one other than UC 39 heard Mr. Garnett say those words. UC 39 reported on the statement in his report. He also passed the statement to another officer, Officer Viruet, who included it in the criminal complaint, which was the basis for Mr. Garnett's prosecution. UC 39 conveyed the information to an assistant district attorney. UC 39 also later testified regarding the statement.

As the jury heard at trial, however, this was not UC 39's first interaction with the plaintiff. Years before this arrest, the plaintiff had assaulted UC 39 while UC 39 was working undercover in Mr. Garnett's apartment complex. According to UC 39, Mr. Garnett held a gun to his head during the course of that assault. Mr. Garnett was arrested and imprisoned as a result of that assault. Mr. Garnett had been released from his term of imprisonment for that arrest just days before UC 39 encountered Mr. Garnett again during the incident that gave rise to this suit. The only person who reported Mr. Garnett's alleged incriminating statement was the victim of an attack by Mr. Garnett years before.

Mr. Garnett was arrested along with his friends. The two friends involved in the hand-to-hand drug transaction inside the store pleaded guilty. Mr. Garnett maintained his innocence and went to trial. He was acquitted. However, because he could not afford to post bail, he spent 8 months in jail awaiting trial.

The plaintiff brought this action pursuant to 42 U.S.C. § 1983.  He alleged that UC 39 falsely arrested him, caused his malicious prosecution, and denied him a right to a fair trial.  The plaintiff also alleged that UC 39's partner, UC 243, failed to intervene to prevent his arrest and prosecution.  A theory promoted by the plaintiff at trial was that UC 39 retaliated against the plaintiff for participating in the prior armed robbery of UC 39, and that the information that UC 39 reported regarding Mr. Garnett's entry into the store, and, particularly, his self-incriminating statement while inside the store, were fabricated.

Following trial, the jury found that UC 243 was not liable with respect to the failure to intervene claim.  The jury found in favor of UC 39 on the false arrest and malicious prosecution claims, but found him liable on the denial of a right to fair trial claim.  The Court charged the jury on the denial of a right to fair trial claim using language proposed by the parties.[2]  The charge instructed that in order to find UC 39 liable, the jury must find that UC 39 fabricated evidence of a material nature, and that he intentionally forwarded that false information to prosecutors.

The jury awarded the plaintiff $1 in consequential damages and $20,000 in punitive damages.  Judgment was entered on December 10, 2014, after UC 39 wrote the Court that he wished to pursue this set of post-trial motions, instead of resolving the matter through

---

[2] The text of the charge read as follows:  "To establish a claim of denial of the right to a fair trial, plaintiff must prove the following elements by a preponderance of the evidence:  (1) that defendant Undercover Officer 0039 fabricated evidence of a material nature, (2) that the fabricated evidence of a material nature was likely to influence a jury's decision, (3) and this fabricated evidence of a material nature was intentionally forwarded to prosecutors by defendant Undercover Officer 0039, and (4) the plaintiff suffered a deprivation of liberty as a result of the fabricated evidence of a material nature.  If you find that plaintiff has failed to prove any of these elements, then you must find in favor of the defendant.  Whether a criminal trial ultimately took place is irrelevant.  Plaintiff must prove that a material fabrication of evidence occurred, the fabrication was likely to influence a jury's decision, the false evidence was forwarded to prosecutors and the plaintiff suffered a deprivation of liberty as a result.  However, a mere mistake, or misinformation, contained in a written record is not a basis for finding a constitutional violation."

settlement.  Docket No. 98.

UC 39 now moves for judgment as a matter of law on the denial of a right to fair trial claim pursuant to Federal Rule of Civil Procedure 50, or, as an alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59.  The plaintiff moves for a new trial on his false arrest, malicious prosecution, and failure to intervene claims pursuant to Federal Rule of Civil Procedure 59.  For the reasons that follow, both parties' motions are denied.

**B.      Analysis**

A moving party bears a heavy burden to prevail on a Rule 50 motion for judgment as a matter of law.  Under Rule 50, judgment as a matter of law is appropriate only where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party . . . ."  Fed. R. Civ. P. 50(a)(1).  There must be "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against him."  *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 127-28 (2d Cir. 2012) (internal quotation marks and citations omitted).  In ruling on a motion for a judgment as a matter of law, the Court must "consider the evidence in the light most favorable to the party against whom the motion was made . . . and give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence."  *Harris v. O'Hare*, 770 F.3d 224, 231 (2d Cir. 2014).

1.      <u>UC 39 Cannot Fabricate Evidence Even If He Had Probable Cause to Arrest Mr. Garnett</u>

UC 39 argues that he cannot be found liable for denial of Mr. Garnett's right to a fair trial because the fabricated evidence did not cause Mr. Garnett's deprivation of liberty.  UC

39 argues that the jury must have found that he had probable cause to arrest Mr. Garnett, because UC 39 was not found liable for the plaintiff's false arrest and malicious prosecution claims—probable cause being a defense to such claims.  Since the arrest itself was privileged by probable cause, the logic goes, Mr. Garnett's deprivation of liberty cannot have been caused by the fabricated evidence.

Here's how UC 39 describes his argument:  "[I]f a prosecution is privileged (i.e. probable cause existed) and the plaintiff's alleged deprivation of liberty is this same privileged prosecution without more, then a plaintiff cannot show that he was harmed from [*sic*] the alleged deprivation.  In other words, when a plaintiff's deprivation of liberty is justified and he alleges nothing more than that deprivation, then the plaintiff cannot seek damages based on an already justified deprivation of liberty."  Memorandum of Law in Support of Defendant's Post-Trial Motions ("Defendant's Motion"), Docket No. 108, at 10.

The leading case in this Circuit regarding claims for deprivation of the right to fair trial is *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997).  *Ricciuti* involved a set of facts similar to those here.  An officer attributed a statement to a criminal defendant, which was included in a memorandum and, in turn "into several subsequent investigation reports prepared in connection with the . . . investigation . . . ."  *Ricciuti*, 124 F.3d at 126.  The Circuit allowed the claim to proceed, holding that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial . . . ."  *Ricciuti*, 124 F.3d at 130; *see also Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) (citing *Ricciuti* for the same proposition).  In *Ricciuti*, the court did not require that the false information submitted to the prosecutor be used at trial, or even that a trial ever take place—the claim accrues when the officer forwards the false information to the prosecutors.

The Second Circuit addressed the question of whether probable cause can be the basis for a defense to a claim of denial of the right to fair trial in *Ricciuti*. The Second Circuit rejected the argument that UC 39 makes here in very clear language, which merits extensive quotation:

> Each of the defendants insists that so long as there was probable cause for Alfred Ricciuti's arrest—independent of the allegedly fabricated evidence—the fabrication of evidence is legally irrelevant. In essence, they argue that as long as the arrest complied with the Fourth Amendment, the Ricciutis can have no claim for post-arrest fabrication of evidence against them. This argument—an ill-conceived attempt to erect a legal barricade to shield police officials from liability—is built on the most fragile of foundations; it is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society. No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee. To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice.

*Ricciuti*, 124 F.3d 129-130.

In the face of this clear published precedent, UC 39 argues here that ""[I]f a prosecution is privileged (i.e. probable cause existed) and the plaintiff's alleged deprivation of liberty is this same privileged prosecution without more, then a plaintiff cannot show that he was harmed from [sic] the alleged deprivation." How can that be?

UC 39 bases his argument on the Second Circuit's unpublished summary order in *Jovanovic v. City of New York*, 486 Fed. App'x. 149 (2d Cir. 2012). The panel in that case summarized the elements of a denial of the right to fair trial claim as follows: "A person suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors,, and (5) the plaintiff suffers a deprivation of liberty as a result." *Id.* at 152. The Circuit cited to *Jocks v. Tavernier*, 316 F.3d 128 (2d Cir. 2003), and *Ricciuti*, 124 F.3d 123, as the basis for this

restatement of the elements of the claim.

UC 39 argues that the fifth prong of the quoted language from *Jovanovic* cannot be met.  UC 39 proposes that because the jury found that he had probable cause for Mr. Garnett's arrest, Mr. Garnett did not suffer a deprivation of liberty as a result of the fabrication; rather, the deprivation of liberty resulted from the privileged arrest.  The danger of UC 39's argument lies in the fact that it appears to be reasonable at first glance—if you look only at the language from *Jovanovic* quoted above in ahistorical isolation and look no further.  The argument's faults are revealed, however, when one scratches the surface.

First, there is no basis on the record in this case to conclude that the jury found that probable cause existed for plaintiff's arrest and prosecution.  The jury found that the plaintiff did not prove his false arrest and malicious prosecution claims by a preponderance of the evidence.  The record does not establish why:  whether the plaintiff failed to prove any element of those claims or if the jury found that probable cause existed.  There is, for example, no special interrogatory in which the jury communicated a finding of probable cause.  The basic factual premise of UC 39's argument is not substantiated—we do not have a concrete finding of probable cause by the jury.

More importantly, however, even if we did have a finding of probable cause by the jury, it cannot be the basis for a defense to the fabrication of evidence by UC 39.  *Jovanovic* says as much—in the sentence immediately following the sentence relied on by UC 39 to construct his argument:  "Probable cause is not a defense."  *Jovanovic*, 486 Fed. App'x. at 152.

*Ricciuti* specifically rejected the argument that UC 39 advances here.  Contrary to UC 39's assertion, "[n]o arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee." *Ricciuti*, 124 F.3d 130.  UC 39's argument too "is built on the most fragile of

foundations; it is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society." *Id.*

UC 39's argument rests on an even more fragile foundation because it is founded on an unpublished summary order. The Second Circuit's rules make it clear that unpublished summary orders—such as that in *Jovanovic*—have no precedential effect. Under the Second Circuit's Rules, as stated in the heading of the Circuit's summary orders deciding appeals, "RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT." *See* 2d Cir. Local R. 32.1.1(a). UC 39 relies on *Jovanovic* as if it had precedential effect. But, as noted, UC 39 goes further, using *Jovanovic* to support his argument that as long as the arrest complied with the Fourth Amendment, the plaintiff can have no claim for post-arrest fabrication of evidence. This, of course, is the precise argument that *Ricciuti* expressly rejected. If *Jovanovic* is not binding precedent, it certainly does not overrule the Second Circuit's decision in *Ricciuti*.[3] One cannot look at the language of a summary order on its face and ignore its provenance and underlying meaning, as UC 39 invites us to do here. This Court must follow *Ricciuti* and conclude that UC 39's argument "is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society." *Ricciuti*, 124 F.3d 129.

The Court is aware that at least one district court opinion appears to rely on *Jovanovic*

---

[3] The argument that led the panel in *Jovanovic* to explore the elements of a denial of a fair trial claim appears not to have been fully presented in that case. The court introduced its discussion as follows: "[Jovanovic] raises the issue in only a perfunctory manner on appeal; but even if it were properly raised it would be unavailing." *Jovanovic*, 486 Fed. App'x. at 152. This is the type of language that frequently introduces dicta. The fact that the issue was not properly presented to the panel supports the conclusion that this non-precedential summary order should not be read to fundamentally reorder the Circuit's view of the denial of a right to fair trial claim.

for the proposition argued by UC 39 here.  In *Hoyos v. City of New York*, 999 F. Supp. 3d 375 (E.D.N.Y. 2013), the court stated that "unlike in *Ricciuti*, [the plaintiff] does not allege that the fabrications led him to be charged with a more serious crime or detained for a longer period of time . . . [w]here independent probable cause exists for the prosecution, plaintiff must show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself.").  *Id.* at 394.  This Court believes that this conclusion is inconsistent with the controlling precedent established by the Second Circuit in *Ricciuti* quoted extensively above.  It is also not a rule that can be administered.

Consider this hypothetical:  An officer has probable cause to arrest a person because the officer has legitimate, credible evidence that the person is selling drugs.  When the person is arrested, the police do not find drugs on his person.  Instead, they fabricate evidence and plant drugs on him.  In this example, the fabricated evidence did not lead the defendant to be charged with a more serious crime than the crime for which there was probable cause.  Under the rule described in *Hoyos*, there would be no liability for the police officer unless the plaintiff could prove that he was in jail longer as a result of the fabricated evidence.

The hypothetical exposes another flaw in UC 39's proposed rule.  How can a court know that the falsified evidence did not influence the decision whether to prosecute a person or the length of a defendant's detention?  A prosecutor can be expected to make different decisions about how to manage a potential drug prosecution where the defendant is found with drugs on his person than she would in a situation in which no drugs were found.  The prosecutor might release the person immediately, or offer a much more lenient plea opportunity.  In this case, perhaps Mr. Garnett would have been set free immediately if the prosecutor did not have the evidence of the acts and statement that UC 39 attributed to him

to support the prosecution. For that reason, an argument that a plaintiff must show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself is fundamentally misguided. The constitutional rights of a citizen are violated "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors . . . ." *Ricciuti*, 124 F.3d at 130. The entire course of a prosecution is corroded by fabricated evidence. It is for that reason, no doubt, that the Second Circuit has established a clear, bright line rule: "No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee." *Ricciuti*, 124 F.3d 130.

      2.    <u>UC 39 Cannot Fabricate Evidence If it is Arguably Inadmissible</u>

UC 39 argues that the denial of a right to fair trial claim against him must fail because "[a] denial of fair trial claim requires *admissible evidence* (such as a false confession, a planted weapon or planted drugs) likely to influence a jury's decision." Defendant's Motion at 8. The jury heard testimony about several means by which evidence found by UC 39 was communicated to the prosecution, in addition to his testimony against Mr. Garnett. UC 39 testified that he discussed his interactions with Mr. Garnett with an assistant district attorney. The jury also heard testimony about a police report created by UC 39, and a criminal complaint written by another officer that incorporated UC 39's statements.

UC 39 argues that the police report and the criminal complaint are hearsay. Since the statements are hearsay, he argues, the only way that the records could get in front of the criminal jury would be through the testimony of UC 39, for which he has absolute immunity. Since the documents were inadmissible hearsay, they are not "likely to influence a jury's decision," which *Jovanovic* describes as an element of a claim for denial of the right to fair trial. There are several flaws in this argument.

To begin, UC 39's reliance on absolute testimonial immunity is misplaced.  In *Coggins v. Buonora,* 776 F.3d 108 (2d Cir. 2015), the Second Circuit clarified that absolute immunity applies only to actions based on a defendant's actual testimony.[4]  In *Coggins*, the question before the court was "whether a law enforcement officer is entitled to absolute immunity as a grand jury witness pursuant to Rehberg when a § 1983 plaintiff alleges that the officer withheld and falsified evidence in addition to committing perjury before the grand jury . . . ." *Id.* at 112.  The answer was no.  In reaching that answer, the Second Circuit relied on the Supreme Court's statement that "we do not suggest that absolute immunity extends to all activity that a witness conducts outside of the grand jury room.  For example, we have accorded only qualified immunity to law enforcement officials who falsify affidavits and fabricate evidence concerning an unsolved crime." *Rehberg v. Paulk*, 132 S.Ct. 1497, 1507 n.1 (2012).  *Coggins*, in fact, involved an allegedly falsified police report.  The defendants in that case were not granted immunity for the falsified police report because it "laid the groundwork" for plaintiff's indictment and was not "*based on* [the defendant's] grand jury testimony." *Coggins*, 776 F.3d at 113.

While an officer has absolute immunity for civil actions based on his actual testimony, he does not have absolute immunity for the actions that he testifies about.  As the Second Circuit held, an interpretation of *Rehberg* that immunized the subject matter of an officer's testimony, rather than the testimony itself "would set a dangerous precedent . . . ." *Coggins*, 776 F.3d at 112.  "Any police officer could immunize for § 1983 purposes any unlawful conduct prior to and independent of his perjurious grand jury appearance merely by testifying before a grand jury.  Such an outcome would also be inconsistent with the

---

4 The Court's ruling on UC 39's summary judgment motion, issued before the Second Circuit's decision in *Coggins*, reviews a number of cases that found no immunity in cases involving records similar to the police report and complaint at issue here.  See Docket No. 57 at 21-24.

limitations *Rehberg* explicitly imposes on the scope of the absolute immunity, which the Supreme Court instructed was not to 'extend[ ] to all activity that a witness conducts outside of the grand jury room.'" *Id.* at 113 (internal citations omitted).

It is this "dangerous" argument that UC 39 relies on here to seek protection from the jury's verdict. He argues that because he has absolute immunity for his testimony, the criminal complaint and the police report which contain his reports regarding Mr. Garnett and his statements cannot be the basis for a finding of liability. But those documents, and UC 39's statements concerning Mr. Garnett that were incorporated into those documents, are not testimony and are not based on testimony. After *Coggins*, it is clear that UC 39 does not have absolute immunity for those acts, even if he does have immunity for testimony about them.[5]

UC 39's argument that evidence must be admissible to form the basis of a denial of the right to fair trial claim is based on a misreading of *Jovanovic* and its predecessors. In reframing the elements of a denial of a right to fair trial, the panel in *Jovanovic* characterized "likely to influence a jury's decision" as a separate numbered element of the claim. UC 39's argument here is premised on an interpretation of that element as requiring a showing that the information must be likely to get to the jury. However, that element is properly understood to require a showing of the materiality of the false information presented—that

---

[5] It is unclear how to reconcile the unpublished summary order in *Jovanovic* with *Coggins*—or the Supreme Court's decision in *Rehberg*, on which *Coggins* relies. *Coggins* clarifies that officers have immunity only for civil actions based on their actual testimony. *Jovanovic* can arguably be read to protect officers from liability for their acts not as a result of, or based on, actual testimony, but on the basis of hypothetical testimony. This approach yields odd results when tested. Under this approach, if one officer fabricates evidence on his own to be used against a criminal defendant, he is protected because he benefits from absolute immunity for the hypothetical testimony that would present that evidence to the criminal jury. What happens, then, if two officers collaborate to falsify evidence? Is neither protected from liability, because the court must hypothesize that one can testify about the other? Or are both protected, because the court must hypothesize that the only way for each officer's falsification to be introduced is through that officer's testimony? Since *Jovanovic* is not binding precedent, and *Coggins* is, the Court need not address these apparent incongruities.

the information would likely influence the jury *if* it arrived at a jury—as a careful reading of *Ricciuti* and *Jovanovic* reveals.

Remember that in *Ricciuti* the Second Circuit held that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial . . . ." *Ricciuti*, 124 F.3d at 130; *see also Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) (citing *Ricciuti* for the same proposition). In *Ricciuti*, the court did not require that the false information submitted to the prosecutor be admissible into evidence, that it be used at trial, or even that a trial ever occur—the claim accrues when the officer forwards the false information to the prosecutors. In *Ricciuti*, the phrase "likely to influence a jury's decision" evidently describes the materiality of the information. It does not require that the falsified evidence be likely to be presented to a jury—again, the cause of action accrues when the information is presented to the *prosecutor*, not when it is presented to the jury.[6]

We know that *Jovanovic* cites to *Ricciuti* and *Jocks* as the basis for its restatement of the denial of a right to fair trial claim, and we know that *Jovanovic* is an unpublished summary order. Yet, UC 39 argues that *Jovanovic* requires the establishment of causal link that was not required in *Ricciuti*; he argues that the "likely to influence a jury's decision" element requires a showing that the false information is likely to get to the jury, where *Ricciuti* required only that the false information be presented to prosecutors. *Jovanovic* does not stand for that proposition.

---

[6] In this case, the jury was required to find "that the fabricated evidence of a material nature was likely to influence a jury's decision" in order to hold UC 39 liable. The jury did so in this case. If the "likely to influence" requirement of the claim can only be satisfied if the evidence at issue is admissible, as UC 39 argues, this element of the denial of a fair trial claim could never be decided by a jury.

*Jovanovic* called out "likely to influence a jury's decision" as a separate element from the causation element (that "the plaintiff suffers a deprivation of liberty as a result"). *Jovanovic*, 486 Fed. App'x. at 152 (emphasis added).  When the *Jovanovic* panel held that absolute immunity shielded the officer from liability in that case, it explained that "Jovanovic cannot show *causation*—i.e., that the alleged fabrication of evidence led to a deprivation of his liberty."  *Jovanovic*, 486 Fed. App'x. at 152 (emphasis added).  The court based its decision on the absence of causation; it did not hold that the officer was shielded because the information was not likely to reach the jury.

UC 39 conflates the two elements.  In doing so, he is incorrectly converting the "likely to influence a jury's decision" prong of *Jovanovic* from a materiality threshold into an additional causation requirement—that the evidence must be likely to reach the jury.  The argument has superficial appeal, if you look merely at the single sentence of quoted language from *Jovanovic* without context.  But the argument is unsupported by the Second Circuit's published decisions, or, indeed, by *Jovanovic* itself.  The position advanced on behalf of UC 39 here "betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society," as clearly described in *Ricciuti*, and does not recognize the pervasive effects of the fabrication of evidence on the entire prosecutorial process.

In his motion, UC 39 recognizes that a falsified confession can be the basis of a claim for denial of the right to fair trial.  Defendant's Motion at 8 ("A denial of fair trial claim requires *admissible evidence* (such as a false confession, a planted weapon or planted drugs) likely to influence a jury's decision.").  In this Court's view, the distinction between a confession and the statement attributed to Mr. Garnett in this case is elusive.  Mr. Garnett's statement was not labelled as a confession—it was labelled as an unguarded comment

felicitously overheard—but it was a profoundly incriminating statement attributed to a criminal defendant by a police officer.  UC 39 concedes that a false confession can form the basis for a denial of a right to fair trial claim, but does not provide a viable basis to deny citizens the opportunity to pursue such a claim with respect to fabricated incriminating statements that are not labelled as confessions.  This Court has not identified a basis to draw such a distinction.

      3.     <u>Evidence Established at Trial</u>

Finally, UC 39 contends that the evidence presented at trial fails to establish a denial of fair trial claim because plaintiff did not adduce evidence to show that UC 39's police report was forwarded to prosecutors.  However, the jury heard testimony from UC 39 that he conveyed information to the arresting officer, and that UC 39 himself spoke with an assistant district attorney regarding Mr. Garnett and his alleged statements inside the store.  Declaration of Matthew J. Modafferi, Docket No. 107 ("Modafferi Decl."), Ex. E. at 71.  UC 39's motion for judgment as a matter of law on this basis is denied.

## II.      DEFENDANT'S RULE 59 MOTION

### A.    Background

This Court denied the defendant's request to introduce at trial excerpts from the plea allocution of the plaintiff's alleged co-conspirator, Mr. Waquan Cintron.  Specifically, the defendant sought to introduce the portions of the plea allocution in which Mr. Cintron stated that he was acting in concert with the plaintiff to sell drugs.  *See* Modafferi Decl. Ex. G.  UC 39 was unsuccessful in his attempts to subpoena Mr. Cintron to appear for a deposition or at the trial in this matter.  In a bench ruling on October 30, 2014, the Court precluded the plea allocution from being introduced as evidence on the ground that Mr. Cintron's statements constituted inadmissible hearsay, and did not fall into one of the

exceptions articulated in Federal Rule of Evidence 804(b)(3) or 807.

###### B.  Analysis

Rule 59 provides that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). When a party moves for a new trial on the ground that the court erroneously excluded evidence, Rule 59 is read in conjunction with Rule 61. That rule provides that "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial. . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. As a result, "[a]n erroneous evidentiary ruling that does not affect a party's 'substantial right' is . . . harmless. . . . Whether an evidentiary error implicates a substantial right depends on 'the likelihood that the error affected the outcome of the case.'" *Tesser v. Board of Educ. of School Dist. Of City of New York*, 370 F.3d 314, 319 (2d Cir. 2004) (internal citations omitted).

UC 39 argues that the statements meet all of the requirements to be admissible under Rule 807: the statements are trustworthy, material, more probative than other available evidence, fulfill the interests of justice, and plaintiff was put on notice regarding the existence of the statements. UC 39 does not appear to dispute here the Court's ruling on the applicability of Rule 804(b)(3).

The Court reaffirms its prior conclusion that the statements were not sufficiently trustworthy or reliable to be introduced under the catch-all exception of Rule 807. First, Mr. Cintron had reason to curry favor with the prosecution by implicating plaintiff in the drug transaction in the hopes of receiving a more favorable plea deal. Second, while the plea was

submitted under oath before a judge, the statements were not subject to cross-examination by plaintiff or anyone else, as they would be in the context of a trial or deposition, as neither plaintiff nor his counsel were present during the plea allocution. *See United States v. Ferguson*, 676 F.3d 260, 287 n.30 (2d Cir. 2011) ("As for the residual exception, it is unclear that the notes have the necessary 'equivalent circumstantial guarantees of trustworthiness,' Fed. R. Evid. 807, because [the declarant] was not cross-examined and there was no transcript from the hearing. "); *O'Brien v. City of Yonkers*, No. 07 Civ. 3974, 2013 WL 1234966, at *8 n.8 (S.D.N.Y. Mar. 22, 2013) (finding that despite the fact that witness's testimony was given under oath, it lacked trustworthiness because, among other things, there was "*no* cross-examination" on one of the relevant issues in the case and "the prosecutor had no reason to clarify the issue during the direct examination") (emphasis in original).  The Court concludes that it did not err in excluding from evidence portions of Cintron's plea allocution because those statements were not sufficiently trustworthy nor reliable, two of the requirements necessary to qualify for the hearsay exception under Rule 807.

Moreover, even if the Court did err, the error did not implicate a substantial right of the defendant.  The plea colloquy implicated Mr. Garnett in the drug transaction, and the defendant understandably wanted to introduce the evidence to paint him in a worse light, but the testimony did not go to any of the essential elements of the plaintiff's case or the defendants' defense.  Mr. Cintron's statement that Mr. Garnett was involved in the drug sale would not bolster the defendants' probable cause defense, because it was not information available to the officers at the time of Mr. Garnett's arrest.  In any event, the defendant's prevailed on the false arrest and malicious prosecution claims at trial.  The fact that Mr. Cintron testified that Mr. Garnett was involved in the drug transaction also does not directly inform the question whether UC 39 fabricated evidence regarding Mr. Garnett.  The

statement did not, for example, affirm that Mr. Garnett made the statement inside the store attributed to him by UC 39. Therefore, the omission of this testimony did not affect a substantial right of the defendant. UC 39's motion for a new trial is denied.

## III.   DEFENDANT'S MOTION TO REDUCE THE PUNITIVE DAMAGE AWARD

Finally, UC 39 moves to have the punitive damage award reduced. UC 39 argues that the $20,000 punitive damage award is excessive compared to the compensatory damage award of $1.

In determining whether a punitive damage award is excessive, a court must consider whether the award is reasonable in amount and in light of the purpose of such damages to punish what has occurred and to deter its repetition. *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996) (quotation omitted). The Supreme Court has established three "guideposts" to assist in this inquiry: (1) the "degree of reprehensibility" associated with the defendant's actions; (2) "the disparity between the harm or potential harm suffered" and the size of the punitive award; and (3) the difference between the remedy in this case and the penalties imposed in comparable cases. *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574-75 (1996); *see also Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 165 (2d Cir. 2014)

With respect to the first guidepost, a court should consider factors such as whether the defendant's misconduct was violent or presented a threat of violence, whether the defendant acted with deceit or malice, and whether the defendant has engaged in repeated instances of misconduct. *Lee*, 101 F.3d at 809. In order to find the defendant liable for denial of a right to fair trial, the jury had to find that UC 39 fabricated evidence. Therefore, the jury's finding supports an inference that UC 39 acted with deceit. The Court can think of no mitigating factors that would justify a reduction in the amount of punitive damages awarded in this case.

19

The second guidepost instructs a court to examine "whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct, as well as the harm that actually has occurred." *Gore*, 517 U.S. 581 (internal quotation marks and citation omitted).  The Second Circuit has explained that "[w]hen the compensable injury is small but the reprehensibility of the defendant's conduct [is] great, the ratio of a reasonable punitive damages award to the small compensatory award will necessarily be very high."  *Payne v. Jones*, 711 F.3d 85, 102 (2d Cir. 2013) (citation omitted).  The *Gore* court repeatedly stressed the difficulty of establishing a bright-line test, as the ratio could vary dramatically depending on the particular facts of a given case.  *Gore*, 517 U.S. at 582-83.  And indeed, courts in this circuit have upheld punitive damages far in excess of compensatory damages in other § 1983 cases in part, no doubt, "because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those previously upheld may comport with due process 'where a particularly egregious act has resulted in only a small amount of economic damages.'"  *State Farm Mutual Auto Insurance Company v. Campbell*, 538 U.S. 408, 425 (2003); *see, e.g.*, *Lee*, 101 F.3d at 811-812 (reducing punitive damages award in malicious prosecution case from $200,000 to $75,000 where compensatory damages were one dollar); *Beckford v. Irvin,* 49 F. Supp. 2d 170, 182 (W.D.N.Y. 1999) (upholding a punitive damages award of $25,000 when compensatory damages were zero dollars in an Eighth Amendment deliberate indifference to medical needs case).  Considering the punitive damage award in this case in purely absolute terms, the amount is relatively small.  The Court could find no § 1983 case in which an award in the range of $20,000 was reduced as excessive.

As for the third guidepost, the difference between the punitive damage award and the criminal and civil penalties authorized or imposed in comparable cases, the Second

Circuit has explained that the rationale for its consideration is that if the latter are much less than the former, it might be said that the tortfeasor lacked fair notice that his wrongful conduct could entail a sizable punitive damages award. *Lee*, 101 F.3d at 811. As the defendant acknowledges, UC 39 could have been exposed to prosecution for making a sworn false statement in the second degree, N.Y. Penal Law § 210.35, falsifying business records in the second degree, N.Y. Penal Law § 175.05, each punishable by up to one year in prison and a $1,000 fine, N.Y. Penal Law §§ 70.15, 80.05, as well as for perjury in the first degree, N.Y. Penal Law § 210.15, punishable by up to seven years in prison and a $5,000 fine, N.Y. Penal Law §§ 70.00, 80.00. While these penalty amounts are less than the punitive damages awarded in this case, criminal penalties understate the notice when the misconduct is committed by a police officer, because, as the court noted in *Lee*, "[the defendant officer's] training as a police officer gave him notice as to the gravity of misconduct under color of his official authority, as well as notice that such misconduct could hinder his career." 101 F.3d at 811.

The fabrication of evidence by a police officer displays not just a callous indifference to the rights of the arrestee, but also constitutes an egregious abuse of authority. It betrays the trust that society has placed in its law enforcement personnel, and distorts our system of justice. Punitive damages awards serve an important role in deterring such misconduct. Considering the totality of the *Gore* factors, the Court concludes that the punitive damages award was not impermissibly high. UC 39's motion to reduce the amount of punitive damages is denied.

## IV.  PLAINTIFF'S RULE 59 MOTION

### A.  Background

Prior to trial, the parties submitted a Joint Proposed Jury Charge.  Docket No. 72. The parties agreed on the instruction defining probable cause.  At the close of the evidence, the Court read the charges to the jury without objection.  During deliberations, the jury submitted a note asking:

> "[W]e ask for a clarification on probable cause.  If an individual reasonably appears to have knowledge of a criminal transaction currently taking place, but does not appear to be involved, is probable cause established?"

*See* Declaration of Robert T. Perry, Docket No. 104 ("Perry Decl."), Ex. A at 2:6-10.  The note arguably suggested that the jury had constructed a theory about why Mr. Garnett was on the scene at the time of his arrest—that he knew that his friends were selling drugs, but that he was not personally involved.

The Court solicited the parties' views before responding to the note.  The plaintiff's counsel wanted the Court to instruct the jury that "if someone has knowledge that a crime is being committed, but is not in any way involved in the crime, that's not criminal activity." *Id.* at 4:9-11.  The Court explained its view that the relevant question for the jury was "whether or not a reasonable person would understand that [plaintiff] was involved in criminal activity.  And that is taken from the point of view of a reasonable officer under the circumstances."  *Id.* at 5:1-16.

The Court stated during the discussion of the note that "I think that their note, as many notes are, is capable of multiple constructions.  I also read the note as reflecting a lack of comprehension or a need to emphasize for the fact that this is an inquiry that is made from the point of view of the officer, not from the point of view of the plaintiff."  *Id.* at 9:2-7.  Plaintiff's counsel wanted a jury instruction that would focus the jury on the point of view of the plaintiff, not the officer.  The instruction proposed by the plaintiff was, in the Court's view, also inconsistent with the evidence presented at trial, because UC 39 clearly

22

testified that he believed that Mr. Garnett was acting like a look-out—not someone who appeared to know about a drug transaction, but appeared not to be involved in it.

The Court proposed a response to the jury's question, based on the original instruction on probable cause, but crafted to focus on the substance of the jury's note. *Id.* at 13:1-2. The Court reviewed the proposed language with the parties and again solicited their views. *Id.* at 6:4-23. The plaintiff again requested that the instructions contain "a clarification that mere knowledge of criminal activity is not a crime, and therefore does not give probable cause to arrest . . . ." *Id.* at 6:24-7:10. Again, the plaintiff's counsel wanted an instruction that would focus the jury on what Mr. Garnett might be thinking, not what the officer was perceiving. Most importantly, however, counsel for the plaintiff agreed on the record that the proposed response to the jury's note was accurate as a matter of law. *Id.* at 11:14-19.

The Court ultimately responded to the jury's note by substantively reiterating the original jury instruction on probable cause, reminding the jury that "probable cause is analyzed from the perspective of a reasonable person standing in the officer's shoes." *Id.* at 12:21-15:2. Addressing the jury's question more specifically, the Court also clarified that if "a reasonable person in Officer 39's shoes, looking at the totality of the circumstances, would not believe that there is a probability that the plaintiff *had committed a crime or was committing a crime*, there would be no probable cause for his arrest." *Id.* at 12:21-15:2 (emphasis added). The Court also referred the jurors to the original written instructions, which included a description of the crime with which Mr. Garnett was charged. *Id.* Furthermore, the Court told the jury that if the Court's response was not helpful, that they should send another note. *See id* at 12:21-15:2. The jury did not send another note.

23

The jury found that UC 39 was not liable on the false arrest or malicious prosecution charge, but liable for the denial of a right to fair trial charge.  The jury also found UC 0243 not liable on the failure to intervene charge.  The plaintiff now argues that had the Court instructed the jury that mere knowledge of criminal activity could not give rise to probable cause, that the jury would have concluded that the defendants lacked probable cause and therefore found in favor of the plaintiff on the false arrest, malicious prosecution, and failure to intervene claims.

### B.    Analysis

Rule 59 provides that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  A motion for a new trial under Rule 59 may be predicated on a court's error in giving or refusing to give instructions to the jury.  *Anderson v. Branen*, 17 F.3d 552, 555 (2d Cir. 1994).  A jury charge is erroneous if it misleads the jury as to the correct legal standard, or if it does not adequately inform the jury of the law.  *See Schermerhorn v. Local 100, Transport Workers Union,* 91 F.3d 316, 322 (2d Cir. 1996).  On the other hand, if the instructions, "taken as a whole and viewed in light of the evidence, show no tendency to confuse or mislead the jury as to principles of law which are applicable," then there is no error.  *Norfleet v. Isthmian Lines, Inc.*, 355 F.2d 359, 362 (2d Cir. 1966).  Thus, a jury instruction will be deemed adequate if "the charge, taken as a whole, is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it."  *Schermerhorn*, 91 F.3d at 322 (internal quotations and citations omitted).

The plaintiff cannot argue here that the Court's response to the note incorrectly stated the law.  The plaintiff's counsel agreed on the record that the response to the note was

an accurate statement of the law.  What the plaintiff is asking for here, then, is not a legally

accurate jury instruction, but one that was slanted to benefit himself by focusing the jury on

what the plaintiff was thinking—his innocence, given that the jury knew of his ultimate

acquittal—rather than the perspective of a reasonable officer at the time of arrest.  By

reemphasizing in the response to the note that probable cause has to be based on a

reasonable belief that an individual *has committed* or *is committing a crime*, the Court adequately

addressed the jury's question of whether an individual who "does not appear to be involved"

in a criminal transaction could give a reasonable officer probable cause to arrest.  The Court

also directed the jury to the original instructions, which included a description of the crime

for which the plaintiff was arrested.  Thus, the Court's instruction on probable cause, "taken

as a whole, is correct and sufficiently cover[ed] the case so that [the] jury [could] intelligently

determine the questions presented to it."  *Schermerhorn*, 91 F.3d at 322 (internal quotations

and citations omitted).  The plaintiff's Rule 59 motion is therefore denied.

## V.      CONCLUSION

For the foregoing reasons, the motions of each of the plaintiff and the defendant,

pending at Docket Nos. 103 and 106, respectively, are denied.  In addition, the plaintiff's

motions for a bill of costs, Docket No. 109, and for attorney's fees and costs, Docket No.

119, are denied without prejudice to renewal.  Those motions were made prematurely during

the pendency of the motions for judgment as a matter of law and a new trial.  They may be

renewed following entry of this order.  The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:  April 6, 2015
New York, New York

_____
GREGORY H. WOODS
United States District Judge